UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHANIE ZAVALA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-19-03341 |
| | § | |
| N HARMON, *et al.*, | § | United States District Court |
| | § | Southern District of Texas |
| Defendants. | § | **ENTERED** |

United States District Court
Southern District of Texas
**ENTERED**
October 20, 2022
Nathan Ochsner, Clerk

## MEMORANDUM AND ORDER

Pending is Defendant Napoleon Harmon's Motion for Summary Judgment (Doc. No. 62) and Motion to Exclude the Opinions of Roger Clark (Doc. No. 60). Plaintiff Stephanie Zavala filed a Response in opposition (Doc. No. 75), and Harmon filed a Reply (Doc. No. 76). The Court has carefully considered the pleadings, motions, evidence in the record, response, reply, and applicable law, and concludes as follows.

## I.   BACKGROUND

The background facts were set forth in detail in the Court's April 8, 2020 Memorandum and Order; therefore, only the relevant facts regarding the sole remaining defendant, Napoleon Harmon, will be repeated briefly here.[1]

---

[1] *See* Doc. No. 17. On November 23, 2021, the Court dismissed all claims against Harris County. *See* Doc. No. 50. Although Zavala named "Jailer Diaz" in her Original Complaint, she does not list Jailer Diaz as one of the parties in Section II ("Parties") of her Second Amended Complaint, which is the live pleading in this case. *See* Doc. No. 20 at 2 ¶¶ 2-4. Regardless, Zavala has not served Diaz, and her time to do so under Federal Rule of Civil Procedure 4(m) has expired. Any and all claims against Diaz are DISMISSED without prejudice pursuant to Rule 4(m).

1 / 23

On September 12, 2017, Zavala was arrested for Class B Misdemeanor criminal trespass from an event that occurred on September 4, 2017. Doc. No. 20 at 3. The incident appears to have occurred at her former place of employment, Landry's, where she had filed grievances about harassment and retaliation. Doc. No. 62-8 at 1.[2] After her arrest, Zavala was booked into the Harris County Jail. Doc. No. 20 at 3. Zavala alleges that while she was waiting in a medical line, she requested water from Defendant Harmon. *Id.* at 4. She alleges that about ten minutes later, Harmon put her in an infirmary cell and shackled her wrists to her ankles because he was annoyed with Zavala. *Id.*

Zavala filed a complaint with the Office of Inspector General for the Harris County Sheriff's Office (OIG) regarding Harmon and another Harris County jailer named Diaz. In her November 21, 2017, OIG sworn statement regarding her claims against Harmon, Zavala states:

> I was placed in a holding cell by a black male officer named Harmon, who told me I could use the restroom in the holding cell. The restroom in the holding cell was not sanitary. There was blood in the toilet, along with fecal and urine stains. There was no toilet paper available to use and I had to drink water from the sink in the holding cell, because Harmon told me no, when I asked for a drink of water. Harmon pointed to the area where the disgusting toilet was and said I could drink from there. My wrists and ankles were shackled and I was put on my knees.

> . . . .

---

[2] In her deposition, Zavala refused to provide any details regarding the arrest or the charged offense, which was dismissed and then expunged. Doc. No. 75-1 at 10-12, Pages 37:8 – 43:22. However, in an email to Sergeant Farquhar of the Houston Police Department, she claims that the HPD officers during her arrest at Landry's "participated in injuring [her]" and kept her in handcuffs for almost two hours. Doc. No. 62-8 at 1. Zavala represents that, other than this incident, she has never been arrested or charged with a crime in her life. Doc. No. 20 at 2.

My complaint today is on two Harris County Sheriff's Office employees, identified as N. Harmon and a female employee, identified only as Diaz, both of whom failed to properly care for my safety while I was incarcerated in the Harris County Jail.

Doc. No. 62-6 (Zavala OIG Sworn Statement) at 2-3.

In her deposition, Zavala stated:

Okay. Once in the infirmary, I was dehydrated, and I asked, I asked for water. [Harmon] denied me a water. He just stood there, did not care at all about my, my needs, my health concerns.

. . . .

I was yelling, asking for help. He got annoyed with me. And that's when he took me to the solitary. He put me on my knees. He got handcuffs to my wrist. And then hog -- with a third one hog-tied me and told me if I wanted water, I, I would have to figure out a way to get there. Which there's no water fountain. It was dirty toilet water.

. . . .

I was in – I was kneeling. He put me – my knees were on the ground. And my body was stand up, but my knees were on the ground. So that's when he put the, the shackles on my ankles, and put me in a hog-tie position.

Doc. No. 75-1 at 14-15, Page 53:9 – 54:3; *id.* at 18, Page 66:10-14.

Defendant Napoleon Harmon moves for summary judgment, contending that Zavala has failed to raise a fact issue on any constitutional violation and that he is entitled to qualified immunity. In support of his motion, he submits the sworn statements of Zavala, Harmon, and Harmon's supervisor; the declaration of Dr. Laxman Sunder; photographs; the video of Zavala's OIG interview; excerpts from Zavala's deposition; and Zavala's medical records from the Jail. *See* Doc. No. 62 and attachments thereto; Doc. No. 63 (under

seal). Zavala filed a Response, attaching her deposition as evidence. *See* Doc. Nos. 75, 75-1.

## II.    LEGAL STANDARDS

### A.    Summary Judgment

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *see also Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence."). Likewise, the nonmoving party "cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citations omitted). In the absence of proof, a reviewing court will not assume that the nonmovant

could or would prove the necessary facts. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir. 1995). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

### B. Qualified Immunity

Public officials acting in the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Therefore, a plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). "Although '[the Supreme] Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.'" *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Id.* (quoting *Plumhoff v. Richard*, 572 U.S. 765, 779 (2014)).

Importantly, "[a] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *King v. Handorf*, 821 F.3d 650, 653-54 (5th Cir. 2016) (cleaned up). "Qualified immunity is a complete defense, and [a defendant is] entitled to summary judgment on the basis of qualified immunity unless [the plaintiff] can show triable issues as to whether [the defendant] violated a clearly established right of which a reasonable officer would have been aware." *Brewer v. Hayne*, 860 F.3d 819, 824 (5th Cir. 2017). When a defendant pleads qualified immunity, the plaintiff "must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (cleaned up). A plaintiff cannot satisfy this burden with conclusory allegations based on speculation or unsubstantiated assertions of wrongdoing. *See Mitchell v. Mills*, 895 F.3d 365, 370 (5th Cir. 2018).

## III. **DISCUSSION**

Zavala claims that Harmon refused her water when she was dehydrated and placed her in a four-point restraint (colloquially called a "hog-tie" restraint) in a holding cell after she was yelling and "annoying" Harmon.[3] She alleges that Harmon used excessive force

---

[3] Zavala also alleges that, on a separate occasion, other inmates assaulted her in a cell and unnamed guards did not help her. In Zavala's OIG interview, she indicates that the incident with the inmates occurred after the incident with Harmon. *See* Doc. No. 66 (Zavala OIG Interview Video) at 1:09:34 – 1:10:08 (she was shackled waiting for the doctor to see her for about two hours and then she was taken to housing after seeing the doctor). She also states that at some point during her detention in the solitary cell, Harmon "switched out" with Jailer Diaz, but she does not specify when during the time she was in the cell that the switch took place. *Id.* at 1:37:45 – 1:37:54; Doc. No. 75-1 at 23, Page 87:12-17. Zavala does not raise a fact issue that Harmon was present during the

6 / 23

in violation of her Fourteenth and Fifth Amendment due process rights and her right to be free from unreasonable search and seizure under the Fourth Amendment. Doc. No. 20 at 22.

### A.   **Fifth Amendment Due Process Claim**

As a matter of law, the Fifth Amendment's due process protections apply against federal actors, not state actors. *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000) (citing *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996)). There is no evidence or other indication that Harmon is a federal actor, and, therefore, Zavala's due process claim sounds under the Fourteenth Amendment, not the Fifth. Zavala's Fifth Amendment claim is dismissed.

### B.   **Fourteenth and Fourth Amendment Excessive Force Claims**

Zavala asserts both Fourth and Fourteenth Amendment claims regarding her allegations of excessive force at the Jail; Harmon contends that only the Fourteenth Amendment applies because Zavala was in custody at the Jail, having been booked into the Jail at the time the incident with Harmon occurred. In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court analyzed a pretrial detainee's excessive force claim under the Fourteenth Amendment. *See id.* at 393, 400-401; *accord Cope v. Cogdill*, 3 F.4th 198, 206 (5th Cir. 2021) ("The constitutional rights of a pre-trial detainee are found in the procedural and substantive due process guarantees of the Fourteenth Amendment.").

---

altercation with the other inmates or that he had any personal involvement in that incident. Therefore, to the extent that Zavala alleges that Harmon failed to protect her during an incident with other inmates, he is entitled to summary judgment on that claim.

The parties do not dispute that Zavala was booked into the Jail at the time the incident with Harmon occurred; therefore, Zavala's claim regarding the use of force is found under the Due Process Clause of the Fourteenth Amendment. *See Cope*, 3 F.4th at 206. Further, regardless of whether the Fourteenth or Fourth Amendment applies here, several circuit courts have noted that "[a]fter *Kingsley*, the Fourteenth Amendment's standard is analogous to the Fourth Amendment's." *Patel v. Lanier County, Ga.*, 969 F.3d 1173, 1182 (11th Cir. 2020); *accord Jacobs v. Cumberland County*, 8 F.4th 187, 194 (3d Cir. 2021) (explaining that the Supreme Court in *Kingsley* "thus clarified that the Fourteenth Amendment, like the Fourth, exclusively employs an objective-reasonableness standard"); *Hopper v. Phil Plummer*, 887 F.3d 744, 752 (6th Cir. 2018) (explaining that "[w]hen assessing excessive-force claims under the Fourth or Fourteenth Amendments, for example, we inquire whether the plaintiff has shown 'that the force purposely or knowingly used against him was objectively unreasonable'" (quoting *Kingsley*, 135 S. Ct. at 2472-73)); *see also Williams v. City of Houston, Texas*, No. CV H-16-3342, 2019 WL 2435854, at *8 n. 1 (S.D. Tex. Jun. 11, 2019) (noting that "Courts have consistently applied the same objective-reasonableness standard to plaintiffs' excessive-force claims under the Fourth and Fourteenth Amendments" (citing *Graham v. Conner*, 490 U.S. 386, 395 (1989), and other cases)).

To prevail on a Fourteenth Amendment excessive force claim, a pretrial detainee like Zavala must show that force was "purposely or knowingly used" against her in a manner that was "objectively unreasonable." *See Kingsley*, 576 U.S. at 396-97 (clarifying

that "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one"). A pretrial detainee can prevail only if she shows that the defendant applied force in a manner that was not "rationally related to a legitimate nonpunitive governmental purpose" or that the actions were "excessive in relation to that purpose." *Id.* at 398 (quoting *Bell v. Wolfish*, 441 U.S. 520, 561 (1979)). Whether an officer's actions are objectively reasonable "turns on the 'facts and circumstances of each particular case.'" *Kingsley*, 576 U.S. at 397 (quoting *Graham*, 490 U.S. at 396). A court looks to the following non-exclusive list of factors to determine whether a use of force was objectively reasonable or unreasonable: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the defendant; and (6) whether the plaintiff was actively resisting. *See id.* (citation omitted). A reviewing court must also consider policies and practices judged necessary by jail officials for the legitimate interests of preserving internal order, discipline, and institutional security. *Id.* (citing *Bell*, 441 U.S. at 540).

### 1. Need for Force vs. Amount of Force Used

Zavala does not dispute that she was yelling and/or screaming in the medical unit waiting room but characterizes her behavior as "annoying" to Harmon and possibly disruptive. She also states that she was having a panic attack during her encounter with Harmon.

Zavala does not submit other medical records that controvert the jail medical providers' assessment that Zavala was experiencing some sort of "adjustment disorder with mixed disturbance of emotions and conduct" during the intake process.[4]   The jail medical records reflect that Zavala was exhibiting "unusual behavior,"[5] and that Zavala "presented with inappropriate behavior, disorderly conduct, incoherent, yelling, screaming, and was placed in seg[regation]" and "possible self-injurious behavior."[6]   The mental health unit providers that saw Zavala after the intake screening noted that Zavala was in crisis and screaming and that they were unable to obtain vital signs or a urine sample.[7]

Zavala claims that she was in handcuffs in the medical department and was dehydrated and wanted water.   She indicates that Harmon got "annoyed" with her screaming, placed her in a solitary cell, and pointed to the dirty toilet area for her to get water.   In her sworn statement, she alleges that she "had to drink water from the sink in the holding cell."[8]   In her deposition, she alleges that Harmon took her to a solitary cell while she was in handcuffs and had her kneel on the ground while he put cuffs in her ankles and

---

[4] *See* Doc. No. 63 (Medical Records) at 2, Harmon 233.  Unless otherwise noted, citations to the document numbers in the record track the pagination stamped at the top of the page in the CM/ECF system.  Zavala's conclusory assertion that the medical records are not "per se objective" does not raise a fact issue regarding whether she was causing a disturbance and acting inappropriately and in a disorderly fashion, as the medical records reflect.  As the non-moving party, she "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'"  *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007); *Miller v. Graham*, 447 F. App'x 549, 551 (5th Cir. 2011); *Chacon v. York*, 434 F. App'x 330, 332 (5th Cir. 2011).  The Harris County Jail medical records are competent summary judgment evidence of Zavala's medical and psychological state and behavior on September 12, 2017.

[5] *Id.* at 7-8, Harmon 238-39.

[6] *Id.* at 8, Harmon 239.

[7] *Id.* at 10, Harmon 241.

[8] Doc. No. 62-2 at 2 (Zavala Sworn Statement).

connected her ankle cuffs to her handcuffs.[9]  She claims that Harmon told her that she would have to figure out how to get water, and she is not sure how long she was shackled in the holding cell.[10]  She also states that someone in the mental health department gave her a Styrofoam cup of water after she was taken out of the holding cell.[11]

In support of summary judgment, Harmon submits the sworn statement of his supervisor, Danny Meece, who states: "I understand that Ms. Zavala was screaming and expressed some suicidal ideations and was uncooperative with staff while in the Mental Health Unit.  Under these circumstances, a reasonable detention officer would place her in handcuffs and shackles to ensure her safety and the safety of others."[12]  Restraining disorderly inmates who are causing a disturbance or are posing a risk of self-harm is rationally related to maintaining jail security and the safety of the inmates.  In that respect, the Supreme Court has noted that "[r]estraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Bell*, 411 U.S. at 540.

In Harmon's sworn statement, he denies placing Zavala in a hog-tie restraint or that he refused to give her water.  He also states that if a detainee like Zavala was placed in

---

[9] Doc. No. 75-1 (Zavala Deposition) at 18, page 66:10-14. Zavala stated that her "body was stand up, but her knees were on the ground." *Id.*

[10] *Id.* at 39, Page 150:2-3.  She indicates that Harmon was sitting in the chair next to her in the medical unit waiting room before taking her to a solitary cell, and that her total interaction with Harmon spanned about three hours. *Id.* at 23, Page 87:20.

[11] *Id.* at 19, Page 73:6-10.

[12] Doc. No. 62-4 at 1.

11 / 23

handcuffs and leg restraints, she would have been under constant supervision and never left alone.[13] Zavala does not contend that Harmon left her unsupervised while she was restrained in the holding cell, but does claim that Harmon connected her handcuffs to her ankle shackles in the holding cell in a "hog-tie" restraint. Although she characterizes the encounter as an "assault," she does not allege facts in her deposition or pleadings to indicate that Harmon used any other force against her other than placing her in the restraints.

Taking Zavala's testimony that Harmon connected her foot shackles to her handcuffs in a "hog-tie" restraint as true, using a four-point or "hog-tie" restraint appears to be more restraint than was necessary to regain control over whatever disruption Zavala was causing and to protect Zavala from herself, even though there appears to have been some need to segregate and restrain Zavala to gain control over her disruptive and possibly self-harming behavior. Therefore, this first factor favors Zavala.

### 2. Extent of Zavala's Injury

Although a plaintiff is not required to show "a significant injury," a pretrial detainee's *de minimis* injuries like bruises, contusions, and abrasions are insufficient to maintain an excessive force claim under Fifth Circuit precedent. *See Westfall v. Luna*, 903 F.3d 534, 547, 549-50 (5th Cir. 2018); *see also Galada v. Payne*, 421 F. App'x 460, 462 (5th Cir. 2011) (holding that a viable Fourteenth Amendment excessive force claim requires that "the plaintiff [must] have suffered at least some form of injury that is more than *de minimis*") (citing *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001)) .

---

[13] Doc. No. 62-2 at 2.

Zavala does not raise a genuine issue of material fact that she suffered injuries that were more than *de minimis*. The medical records reflect that she only complained of some wrist pain from her handcuffs, and the photographs in the record do not indicate anything more than minor bruises or abrasions.[14]   Although she contends that dehydration and mental health effects from the incident are more than *de minimis*, there is no indication in her jail health records that she was dehydrated, even though she was seen in the mental health unit shortly after the incident in question, in addition to other medical visits that night or the next morning.  Further, she does not show that her mental health issues were caused directly and only by her encounter with Harmon as opposed to the mental health crisis she experienced in the jail that led to her segregation and restraint, or any mental health effects resulting from whatever happened with her job and arrest at Landry's,[15] or the altercation she had with other inmates after she was placed in housing.  *See Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005) (holding that the plaintiff did not show that his psychological injuries were caused by the handcuffing and noting that "handcuffing too tightly, without more, does not amount to excessive force") (citation omitted); *see also Westfall*, 903 F.3d at 549-50 (holding that the plaintiff did not show that her injury was

---

[14] *See* Doc. No. 63 at 14, Harmon 245; Doc. No. 62-8 at 25-26.  Notably, Zavala's email to which the photographs are attached attributes her wrist bruises to the HPD officers during her arrest at Landry's, who, according to Zavala, "participated in injuring [her]" and "kept [her] in handcuffs and interrogated [her] in the office for almost 2 hours without reading [her] Miranda rights." Doc. No. 62-8 at 1.

[15] *See generally* Doc. No. 66 (Zavala's OIG interview video) (indicating that Zavala attributes at least some of her mental distress to the owner of the company she worked for and his underlings, who allegedly retaliated against her for her grievances and complaints against them, and stating that all of this could have been avoided if it were not for their actions).

13 / 23

caused by one officer who immobilized her instead of the other officer who body-slammed her). Zavala does not show that Harmon caused more than a *de minimis* injury by restraining her. This factor weighs heavily in Harmon's favor.

### 3. Any effort made to temper the amount of force

Zavala does not allege that Harmon used any other force other than placing her in the four-point restraint. When asked to elaborate about her general allegation of "assault," she states that Harmon hog-tied her and was verbally aggressive.[16] There is no indication that Harmon used any other force on Zavala. Although Zavala argues that Harmon could have tempered the amount of force used by not connecting her ankle shackles to her handcuffs, this factor favors neither party because Zavala alleges no other physical force other than the restraint itself. *See Tarver*, 410 F.3d at 751.

### 4. The severity of the security problem at issue

Zavala acknowledges that she was yelling or screaming in the medical unit and "causing a lot of noise."[17] As noted previously, the medical records indicate that Zavala was acting in an inappropriate and disorderly fashion in the medical unit and exhibited possible intentions of self-harm. The competent summary judgment evidence from Meece, Harmon's supervisor, indicates that when an inmate is being disruptive and is posing a possible danger to themselves, it is appropriate to segregate and restrain that individual.[18]

.

---

[16] *See* Doc. No. 75-1 (Zavala Depo.) at 20, Page 76:15-21, 78:5-9 (indicating that being shackled and hog-tied was the assault).

[17] Doc. No. 75-1 at 19-20, Page 73:20-74:5.

[18] Doc. No. 62-4 at 1.

The Supreme Court has explained that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell*, 441 U.S. at 546, 547 n.28 (1979) (noting that pretrial detainees in certain circumstances may present "a greater risk to jail security and order" than convicted inmates). This factor favors Harmon.

### 5. Threat reasonably perceived by Harmon

Harmon does not recall this specific incident. However, the contemporaneous jail medical records reflect that Zavala was causing enough of a disturbance in the medical department that other medical observers at the time noted her inappropriate behavior in her medical record, as explained above. Based on the medical records and Zavala's testimony that she was screaming and having a panic attack, a reasonable officer could have perceived that Zavala needed segregation and restraint. This factor favors Harmon.

### 6. Whether plaintiff was actively resisting

As noted above, evidence in the record indicates that Zavala was causing some sort of disturbance and was exhibiting signs of being in crisis. There is no indication that Zavala was actively resisting efforts to restrain her, but there also is no indication that Harmon used any other force to place her in the restraints. Zavala does not allege or point to evidence to show that Harmon pushed her, struck, placed her in a prone position, or placed his knee on her back to gain compliance with the restraint. This factor favors neither party.

Carefully considering the *Kingsley* factors and Fifth Circuit precedent, Zavala does not raise a fact issue that the force Harmon used was objectively unreasonable under the circumstances, given the minimal actual physical force used and lack of injury sustained. Viewing the summary judgment evidence in the light most favorable to Zavala, there is no evidence that Harmon used any other force other than placing Zavala in the four-point restraints, and no genuine fact issue that Zavala's injuries due to the restraint were more than *de minimis*.

Further, there is no allegation or evidence that Zavala was under the influence of any mind-altering drugs, that she was left unsupervised, or that she was placed in a prone position that caused asphyxiation and death. *Cf. Gutierrez v. City of San Antonio*, 139 F.3d 441 (5th Cir. 1998) (holding that triable fact issues existed where, after the arrestee informed officers that he was on "bad cocaine," the officers hog-tied him, placed him in a prone position in the back of a squad car without supervision, and the arrestee died from asphyxiation). Even in cases where the restrained individual died due to positional asphyxiation, the Fifth Circuit has held that the officer was entitled to qualified immunity in circumstances that involved much more physical force than is alleged in this case. *See, e.g., Pratt v. Harris County, Tex.*, 822 F.3d 174, 184 (5th Cir. 2016) (holding that there was no constitutional violation based on excessive force where the arrestee, whose commitment to stop resisting was "on again, off again" and who was tased repeatedly, died after the officers hog-tied him for a brief period and the officers did not know he was under the influence of drugs); *Khan v. Normand*, 683 F.3d 192, 195-96 (5th Cir. 2012)

(finding no violation of clearly established law because the arrestee "was not left face down in the four-point restraint for an extended period of time," "remained under constant supervision," and there was no indication that he was in a drug-induced psychosis); *Hill v. Carroll County*, 587 F.3d 230, 232-33, 237 (5th Cir. 2009) (finding no constitutional violation where an obese arrestee died after being hog-tied and placed alone and face down in the back seat of a patrol car for a 29 mile ride to the jail and holding that *Gutierrez* "does not hold four-point restraint a per se unconstitutionally excessive use of force"). In sum, Zavala does not raise a fact issue that the force used to segregate and restrain her after she was causing a disruption in the medical department was unreasonable based on all of the circumstances presented here.

Even if Zavala had raised a fact issue on her Fourteenth Amendment claim regarding the four-point restraint, Harmon is entitled to qualified immunity. Zavala does not cite, and the Court has not found, any case that clearly establishes that using a four-point restraint under constant supervision causing no more than *de minimis* injury violates the Fourteenth or Fourth Amendment rights of a pretrial detainee who was making a disturbance and showed some risk of self-harm.

Nonetheless, Zavala points to *Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2017), to argue that the clearly established law standard's central concept is "fair warning" and that she need not point to a specific case with similar facts to what happened here. However, the Supreme Court has "'repeatedly told courts . . . not to define clearly established law at a high level of generality.'" *Kisela*, 138 S. Ct. at 1152 (quoting *City and*

*County of San Francisco v. Sheehan,* 575 U.S. 600, 613 (2015); *Ashcroft v. al-Kidd,* 563 U.S. 731, 742 (2011)). The Supreme Court has further clarified that, in the excessive force context, "specificity is especially important" and is an area of the law "in which the result depends very much on the facts of each case." *Mullenix v. Luna,* 577 U.S. 7, 12 (2015).

Zavala attempts to overcome qualified immunity by arguing that, to the extent the *Kingsley* factors are derived from the *Graham* factors, "the fact that [those factors] all weigh against the Defendant clearly establishes his violation." Doc. No. 75 at 10. As explained above, the *Kingsley* factors do not all weigh against Harmon and this is not an obvious case of excessive force. Further, the Supreme Court has repeatedly rejected the argument that the general *Graham* factors meet a plaintiff's burden on qualified immunity. *See Kisela,* 138 S. Ct. at 1153 ("But the general rules set forth in '*Garner*[19] and *Graham* do not by themselves create clearly established law outside of an obvious case'" (quoting *White,* 137 S. Ct. at 552)); *Sheehan,* 575 U.S. at 613; *Mullenix,* 577 U.S. at 12-13; *Plumhoff,* 572 U.S. at 779 (noting that *Garner* and *Graham* "are cast at 'a high level of generality'"); *Brousseau v. Haugen,* 543 U.S. 194, 199 (2004) (per curiam) (holding that the court of appeals was "mistaken" when it found fair warning in the general tests set forth by *Garner* and *Graham*). Zavala does not meet her burden to overcome Harmon's assertion of qualified immunity by showing that he violated clearly established law. Therefore, Harmon is entitled to summary judgment on Zavala's excessive force claims.

---

[19] *Tennessee v. Garner,* 471 U.S. 1 (1985).

### C.     Fourteenth Amendment Claim for Failure to Provide Water

Zavala claims that Harmon "refused her a water" when she asked for water and that she was dehydrated. "The Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute 'punishment.'" *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996) (citing *Bell*, 441 U.S. at 535). Even so, *de minimis* restrictions do not amount to punishment and are not sufficient to maintain a claim under section 1983. *See id.* at 106 (affirming dismissal of a pretrial detainee's conditions of confinement claim because his allegations amounted to no more than a "*de minimis* level of imposition" such that the conditions were not punishment).

Zavala claims that Harmon refused to give her water and that her entire interaction with him lasted about three hours.[20] She also acknowledged that she received water in the mental health unit after she was released from the holding cell. Taking the evidence in the light most favorable to Zavala, the delay in her receiving water due to Harmon's actions or omissions lasted, at most, three hours.

The Court finds that the temporary deprivation of water alleged here is *de minimis* and does not suffice to raise a fact issue on Zavala's constitutional claim. *See, e.g., Hamilton*, 74 F.3d at 106 (finding that a pretrial detainee's allegations that he was denied visitation, telephone access, recreation, mail, legal materials, sheets, and showers for three days was *de minimis* and did not amount to a constitutional claim); *Baughman v. Hickman*, 935 F.3d 302, 306-07 (5th Cir. 2019) (holding that the deprivation of a dose of medication

---

[20] *See* Doc. No. 75-1 at 23, Page 87:20 (Zavala Depo.).

was not actionable where he was able to receive a later dose by other means); *Collins v. Ainsworth*, 382 F.3d 529, 545 (5th Cir. 2004) (holding that the plaintiffs were exposed to only "*de minimis* level of imposition" where they had to stay in an overcrowded jail without a mattress for about 24 hours); *Simons v. Clemons*, 752 F.2d 1053, 1054-55 (5th Cir. 1985) (affirming the district court's grant of summary judgment that found that the pretrial detainee's deprivation of her pain medication was "so insubstantial that it is not constitutionally cognizable" and noting that the Fifth Circuit subscribes to the view that "there is, of course, a *de minimis* level of imposition with which the Constitution is not concerned") (citation omitted)); *see also Jones v. City of Picayune, Miss.*, No. 1:08CV1318-HSO-JMR, 2010 WL 4781178, at *6 (S.D. Miss. Jun. 1, 2010) (*report and rec. adopted*, 2010 WL 5094374 (S.D. Miss. Nov. 17, 2010) (holding that the pretrial detainee's allegations of inadequate food and water did not show any punitive purpose, were *de minimis*, and were not actionable).

Further, there is no indication in the medical records that Zavala reported being dehydrated from a few hours' delay in receiving water when she was at the Jail, even though she was seen in the medical department on multiple occasions during the day or two that she spent there and had multiple opportunities to do so. A delay in a pretrial detainee's receiving care or other needs is not actionable unless that delay is the result of deliberate indifference and causes substantial harm. *See, e.g., Childers v. San Saba County*, 714 F. App'x 384, 386 (5th Cir. 2018) (holding that the delay in the pretrial detainee receiving his heart medication was not actionable because there was no evidence that he

suffered substantial harm from missing one dose of his medication) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)); *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016) (holding that a pretrial detainee's delay in receiving medical attention was not actionable because it did not result in substantial harm); *Westfall*, 903 F.3d at 551 (delay in receiving medical care not actionable unless it is caused by deliberate indifference and results in substantial harm).

Further, Harmon is entitled to qualified immunity on this claim because Zavala points to no Supreme Court or Fifth Circuit precedent clearly establishing that refusing to provide water to a pretrial detainee for a short period of time would violate her constitutional rights. Zavala acknowledged that she received water shortly after she was taken from the holding cell to the mental health care unit, and a careful review of her medical records does not disclose any harm from Harmon's temporary denial of water, which lasted, at most, a few hours. Therefore, Harmon is entitled to summary judgment on Zavala's claims against him.

## IV.   **MOTION TO EXCLUDE**

Harmon moves to exclude the expert report of Roger Clark, contending that it consists of legal conclusions, addresses claims against parties that have been dismissed, and contains conclusory opinions not based on fact. Zavala does not rely on any of Roger Clark's opinions in her response to the summary judgment motion, and, therefore, none of his opinions were used to raise any fact issue. *See* Doc. No. 75. Thus, in view of the

summary judgment and qualified immunity ruling set forth above, Clark's opinions are irrelevant.

Furthermore, Clark's opinions regarding Harmon's conduct are inadmissible legal opinions. *See Owen v. Kerr–McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) (noting that "allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant"). In the context of the Fourth and Fourteenth Amendments, an expert cannot offer legal conclusions on whether an officer's use of force was reasonable or not. *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003); *McBroom v. Payne*, 478 F. App'x 196, 200 (5th Cir. 2012). Clark's expert report otherwise consists of conclusions about the County's policies, without analysis; Harris County was dismissed previously, and such conclusory statements are unhelpful and inadmissible. The motion to exclude (Doc. No. 60) is granted.

## V.   **CONCLUSION AND ORDER**

Based on the foregoing, the Court **ORDERS** as follows:

1. Defendant Napoleon Harmon's motion for summary judgment (Doc. No. 62) is **GRANTED**, and Plaintiff Stephanie Zavala's claims against him are dismissed with prejudice.

2. Defendant's motion to exclude opinions of Roger Clark (Doc. No 60) is **GRANTED**.

3. Defendant's motion to exceed page limit (Doc. No. 65) is **GRANTED**.

4. Plaintiff's motion for extension of time (Doc. No. 69) is **GRANTED**, and her

response is considered timely filed.

5. Any and all claims against Officer Diaz are **DISMISSED** without prejudice

   pursuant to Federal Rule of Civil Procedure 4(m).

6. All other motions, if any, are **DENIED**.

The Clerk will provide a copy of this Order to the parties.

SIGNED at Houston, Texas, this ____14th____ day of October 2022.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE